```
                    IN THE UNITED STATES DISTRICT COURT
                       FOR THE DISTRICT OF MARYLAND

CONNECTICUT GENERAL LIFE
INSURANCE COMPANY                 *
                                  *
v.                                *
                                  *   Civil Action No. WMN-14-03670
EDWARD S. FELDMAN                 *
&                                 *
PENN MORTGAGE COMPANY, INC.       *
                                  *
                                  *
   *    *    *    *    *    *    *    *    *    *    *    *    *    *    *
```

## MEMORANDUM

Before the Court is a Motion to Dismiss Defendant Edward Feldman's Counterclaims, ECF No. 14, filed by Plaintiff Interpleader Connecticut General Life Insurance Company (CGLIC) and a Motion to Dismiss Cross-Claims and for Judgment, ECF No. 15, filed by Defendant Penn Mortgage Company (Penn).  The motions are ripe.  Upon a review of the pleadings and the applicable case law, the Court determines that no hearing is necessary, Local Rule 105.6, and both motions will be granted.

## I. FACTUAL AND PROCEDURAL BACKGROUND

CGLIC has filed a Complaint for Interpleader to seek certainty regarding Defendants Mr. Feldman's and Penn's respective rights to annuity payments for which CGLIC is the issuer.  Mr. Feldman was awarded the Annuity in 1984 to fund attorney fees due after resolution of a lawsuit throughout which

Mr. Feldman served as counsel.  The Annuity included two payment schedules.  Mr. Feldman received "lifetime payments with period certain," consisting of 360 guaranteed monthly payments of $1,000 and continuing monthly payments of the same amount for the duration of his life.  Compl. Ex. B, ECF No. 1-5 at 3.  He also received "guaranteed payments" consisting of four payments in the amounts of $10,000, $20,000, $40,000, and $50,000 to be paid on November 10 of 1994, 1999, 2004, and 2014, respectively.[1]  Id. at 4.

On August 16, 1989, Mr. Feldman assigned the Annuity to Penn as security for an $115,000.00 loan.  Under the terms of the loan, Mr. Feldman was to pay monthly interest-only payments in the amount of $1,677.08 from October 1, 1989, until September 1, 1990.  At that time, the entire unpaid balance of the principal sum ($115,000) and any unpaid interest would be due and payable in full.

The Assignment identifies two types of payments: "guaranteed periodic payments" and "guaranteed lifetime payments."  Compl. Ex. C at 1, ECF No. 1-6 at 1.  The terms of the Annuity are incorporated by reference, as the agreement notes these "guaranteed periodic payments" and "guaranteed

---

[1] Mr. Feldman chooses to refer to the "guaranteed payments" as the "lump-sum payments."  This Court will refer to the two types of payments in the Annuity as they are designated in that document.

2

lifetime payments" are "more fully set forth in the Annuity." Id.  In the Assignment, Mr. Feldman warranted that "the guaranteed periodic payments remaining to be paid under said Annuity are 320 payments of $1,000.00 each." Id.  The Assignment further states that the "Assignor hereby assigns said Annuity unto Lender." Id.

In addition, the Assignment provides that "[u]ntil the occurrence of an Event of Default . . . Assignor shall continue to receive and enjoy the periodic payments under the terms of the Annuity.  No periodic or lifetime payment greater than $1,000.00 each shall be received by Assignor." Id.  Default can be triggered by the "failure of the Undersigned to pay when due any of the installment payments." Id. at 12.  Upon such an event, Penn had the option to either declare the entire unpaid balance and interest accrued due immediately, or exercise the remedies set forth in any of the loan documents. Id. at 13.

In November of 1989, Mr. Feldman defaulted on the loan. Upon default, Penn revoked Mr. Feldman's right under the Assignment to receive monthly Annuity payments.  Penn thereafter alerted the owner of the Annuity, Aetna, of the default and demanded receipt of all payments due under the Assignment until the loan was satisfied.  In February of 1990, pursuant to this correspondence, the owner directed CGLIC to issue all future payments to Penn.  At this point, Penn began collecting all

$1,000 monthly payments.  It also collected the $10,000 payable on November 10, 1994, and the $20,000 payable on November 10, 1999.

In May of 2004, Mr. Feldman wrote to the Annuity owner.  In this letter he indicated he had been unable to reach Penn to inquire about the status of his loan and requested the owner stop the Annuity payments to Penn or inquire itself about the loan's status.  Mr. Feldman forwarded this letter to CGLIC that same month.

In June and July of 2004, Penn sent correspondence to CGLIC indicating Mr. Feldman's loan had not yet been satisfied and demanding release of the $40,000 payment due on November 10, 2004.  CGLIC released this payment to Penn.  Penn sent similar correspondences to CGLIC in September and November of 2014, again indicating Mr. Feldman's loan had not been satisfied and demanding release of the $50,000 payment due on November 10, 2014.  On November 7, 2014, Mr. Feldman's counsel at the time wrote to CGLIC requesting it cease all payments to Penn and asserting that Penn had never been entitled to the "guaranteed payments" under the Assignment of the Annuity.[2]  ECF No. 1-15 at 3.

---

[2] This letter refers to the "guaranteed payments" as the "principal," but again, this Court will refer to the payments as they are designated in the Annuity.

4

As a result of the conflicting interests, CGLIC suspended all Annuity payments beginning with the November 10, 2014, "guaranteed payment," and filed a Complaint for Interpleader on November 21, 2014. In response to the interpleader complaint, Mr. Feldman filed two counterclaims for breach of contract and breach of fiduciary duty against CGLIC. He also filed seven cross-claims against Penn for breach of contract (Count I), fraudulent misrepresentation (Count II), fraudulent concealment (Count III), negligent misrepresentation (Count IV), unjust enrichment (Count V), unconscionable loan terms (Count VI), and conversion (Count VII).

The causes of action for the counterclaims and cross-claim Counts I-V and Count VII stem from Mr. Feldman's belief that under the Assignment of the Annuity Penn is entitled to collect only the $1,000 monthly payments, but CGLIC has issued, and Penn has accepted, the November 10 payments as well. Because CGLIC issued these payments, Mr. Feldman claims it breached the terms of the Annuity and the Assignment,[3] and breached its fiduciary duty to deliver the "guaranteed payments" to Mr. Feldman. Similarly, because Penn requested the "guaranteed payments" from CGLIC, Penn either negligently or fraudulently misrepresented its entitlement to these funds (Counts II and IV). Further, by

---

[3] As CGLIC points out, it could not have breached the Assignment since it was not a party to that contract. CGLIC Mot. to Dismiss, ECF No. 14-1 at 12.

accepting the "guaranteed payments" Penn breached the terms of the Assignment (Count I) and exercised control over these payments without Mr. Feldman's consent (Count VII).  Finally, by its failure to communicate with Mr. Feldman regarding the status of his loan, Penn intentionally concealed its receipt of the "guaranteed payments" in order to prevent Mr. Feldman from recovering these funds (Count III), which resulted in Penn's unjust enrichment through retention of these funds (Count V).[4]

On March 2, 2015, CGLIC filed a motion to dismiss on the ground that Mr. Feldman's counterclaims failed to state a claim upon which relief could be granted.  CGLIC also asserted that Mr. Feldman is precluded from filing a claim for the November 10, 2014 payment, since allowing a claim for the interplead funds would defeat the purpose of an interpleader action.  Penn filed its motion to dismiss on March 2, 2015, on the ground that Mr. Feldman's assignment to Penn granted all Annuity payments to Penn.[5]  In addition, Penn filed a motion for judgment on the

---

[4] Penn groups cross-claim Counts I-IV and Count VII as "contract-related."  The Court will consider Mr. Feldman's cross-claim for unjust enrichment (Count V) in the same category, since its resolution also turns on whether Penn was assigned all payments under the Annuity.  Mr. Feldman's remaining cross-claim of unconscionable loan terms is based on his belief that Penn imposed an oppressively high interest rate without an opportunity for bargaining.

[5] Penn and CGLIC also argue that Mr. Feldman's claims are time-barred.  For the reasons that follow, because the resolution of Penn's Motion for Judgment also resolves the question of Mr.

interpleader requesting that the Court find Penn is entitled to all payments under the Annuity.

## II. LEGAL STANDARDS

The correct standard under which to analyze a motion to dismiss asks whether the plaintiff's claims include sufficient factual allegations to plausibly suggest that the pleader is entitled to relief. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555-57 (2007).[6] The plausibility standard is not a probability requirement. Id. at 556. A judge will assume the claims' factual allegations are true, even if "proof of those facts is improbable." Id. Even so, "[f]actual allegations must be enough to raise a right to relief above the speculative level;" " a [claim] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will

---

Feldman's counter and cross-claims, the Court needs not address the issue of timeliness. The Court notes that if it were to reach the question of whether Mr. Feldman's claims were time-barred, it would do so with a record that dates back twenty years.

[6] Mr. Feldman suggests that a claim should not be dismissed unless it is certain the party bringing the claim would not be entitled to relief under any set of facts. Opp. to Penn Mot. to Dismiss, ECF No. 18-1 at 5; Opp. to CGLIC Mot. to Dismiss, ECF No. 19-1 at 4 (citing Mylan Labs., Inc. v. Matkari, 7 F.3d 1130, 1134 (4th Cir. 1993). The Supreme Court opined eight years ago that this standard "is best forgotten as an incomplete, negative gloss on an accepted pleading standard . . ." Twombly 550 U.S. at 563.

not do." Id. at 555. From the claims, the court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); see also Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009). In evaluating the factual allegations, the court may not look outside the pleadings, but may consider documents attached to the complaint. Whiting-Turner Contracting Co. v. Liberty Mut. Ins. Co., 912 F. Supp. 2d 321, 332 (D. Md. 2012).

A Rule 12(c) motion for judgment on the pleadings is appropriate if the pleadings are closed, but trial will not be delayed by the motion. Fed. R. Civ. P. 12(c). "Federal Rule 12(c) should be read in conjunction with several other federal rules authorizing pretrial motions . . . ." Geoghegan v. Grant, No. CIV. A. DKC 10-1137, 2011 WL 673779, at *3 (D. Md. Feb. 17, 2011). Because Rule 12(c) should be considered together with any pretrial motion, the standard under which to evaluate a 12(c) motion depends on the type of relief being sought. Id. For example, if a party is seeking a final judgment on the merits using a 12(c) motion, the standard should be the same as that for a motion for summary judgment, since summary judgment also concerns the substance of the party's claim. Id. Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). This standard requires there be no "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). "The key distinction between a Rule 12(c) motion and a Rule 56 motion is that the court may not consider facts outside the pleadings under Rule 12(c)." Geoghegan, 2011 WL 673779, at *3.

**III. DISCUSSION**

CGLIC filed its complaint for interpleader pursuant to 28 U.S.C. § 1335, which grants the district courts original jurisdiction over interpleader claims involving at least $500 in funds and claimants of diverse citizenship. 28 U.S.C. § 1335(a)(1). Because the action is brought based on diversity, rather than a question of federal law, a federal district court will apply the substantive law of the state in which it sits. Erie R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). In this case, therefore, Maryland law must be applied in order to interpret the terms of the Assignment and the Annuity.

Maryland employs an objective test to interpret contracts. Adloo v. H.T. Brown Real Estate, Inc., 686 A.2d 298, 304 (Md. 1996). "A court construing an agreement under this test must first determine from the language of the agreement itself what a

9

reasonable person in the position of the parties would have meant at the time it was effectuated." Gen. Motors Acceptance Corp. v. Daniels, 492 A.2d 1306, 1310 (Md. 1985)). The language should be considered as part of the whole, so that each provision is interpreted in the same way. Walker v. Dep't of Human Res., 842 A.2d 53, 61 (Md. 2004). The parties' intended meaning is not relevant to the interpretation if not expressly conveyed. Daniels, 492 A.2d at 1310. Specifically, an assignment is presumed to convey the entire interest over which an assignor has power if the assignment does not clearly state that less than the entire interest has been granted. Case v. Marshall, 152 A. 261, 264 (Md. 1930). If a reasonable person could find the language has more than one meaning, the court may decide that the contract is ambiguous. Prison Health Servs., Inc. v. Baltimore Cnty., 912 A.2d 56, 61 (Md. Ct. Spec. App. 2006). In the case of an ambiguous contract, extrinsic evidence may be considered to interpret the contract's meaning. Id.

Mr. Feldman, in arguing that the Assignment did not transfer the four "guaranteed payments," relies on term discrepancies between the Annuity and the Assignment. In the Annuity, two types of payments – "lifetime payments with period certain" and "guaranteed payments" – are identified while the Assignment uses the terms "guaranteed periodic payments" and "guaranteed lifetime payments." Mr. Feldman asserts that the

10

term "guaranteed periodic payments" in the Assignment is intended to mean the 360 guaranteed monthly payments of $1,000, and the term "guaranteed lifetime payment" is intended to mean the continuing monthly payments of $1,000 he is entitled to for the duration of his life.  ECF No. 18-1 at 7.  To support this interpretation, Mr. Feldman points to the fact that he was required to warrant that "the guaranteed periodic payments remaining to be paid under said Annuity are 320 payments of $1,000.00 each" but did not warrant to any other payment due. Mr. Feldman's interpretation would have the Court conclude that both "guaranteed periodic payments" and "guaranteed lifetime payments" refer to the "lifetime payments with period certain" as defined in the Annuity, but do not include the "guaranteed payments" to be made on the 10th of November of 1994, 1999, 2004, and 2014.  Thus, the Assignment entitles Penn to the $1,000 monthly payments, but not the payments made every five years on November 10.

In contrast, Penn asserts that the Assignment "unqualifiedly" assigned the whole Annuity to Penn.  Penn points to the main granting clause "Assignor hereby assigns said Annuity unto Lender" and argues that such language contains "no hint that less than the entire payment stream was being assigned."  Penn Mot. to Dismiss, ECF No. 15-1 at 7.  To support its argument, Penn points to clause in which Mr. Feldman is

11

granted the right to the $1,000.00 monthly payments in the absence of default, arguing that this limited grant would expressly indicate the treatment of the "guaranteed payments." Therefore, according to Penn, all payments awarded under the Annuity are considered in the Assignment.

Although Mr. Feldman wishes to highlight the discrepancy in terminology between the Annuity and the Assignment, a complete reading of the Assignment shows that Mr. Feldman assigned the whole Annuity to Penn.  The Assignment states unambiguously that "Assignor hereby assigns said Annuity unto Lender."  ECF No. 1-6 at 2.  In the absence of clear language to the contrary, a reasonable person would interpret this language to convey the entire Annuity to the lender.  Although the Assignment makes reference to "guaranteed periodic payments" and "guaranteed lifetime payments," the Assignment also sets forth that the full definition of those payments stems from the text of the Annuity.

The provision following makes even clearer that Penn should be awarded the "guaranteed payments" as defined in the Annuity. The Assignment states, "Until the occurrence of an Event or Default, Assignor shall continue to receive and enjoy the periodic payments under the terms of the Annuity.  No periodic or lifetime payment greater than $1,000.00 each shall be received by assignor."  ECF No. 1-6 at 2.  Thus, Mr. Feldman is precluded from receiving any payment over $1,000.  Since the

12

"guaranteed payments" begin at $10,000, the Assignment clearly designates these payments to Penn. Mr. Feldman confirmed this in his letter to CIGNA dated the same day as the Assignment. He wrote, "There shall be no payments to me beyond the monthly $1,000.00 guaranteed amount throughout the Assignment unless the Penn Mortgage Company first consents thereto in writing." Compl. Ex. D, ECF No. 1-7.[7] Mr. Feldman's letter demonstrates that the Assignment gave Penn control of the Annuity while Mr. Feldman's loan was unpaid.

In fact, Penn was to receive the "guaranteed payments" even if Mr. Feldman had not defaulted on the loan. Penn had allowed Mr. Feldman to retain the rights only to the $1,000 monthly payments, and only so long as he did not default on the loan. Because the Assignment designates the "guaranteed payments" to Penn, Penn was due the payments remitted on November 10 of 1994, 1999, and 2004. Accordingly, Penn was also due to receive the

---

[7] Although it is not necessary for the Court to examine this evidence extrinsic to the contract to interpret the meaning of the Assignment, it is proper to consider it when ruling on a 12(b)(6) and 12(c) motion, since the letter was attached as an exhibit to the Complaint. Mr. Feldman's reliance on Bosiger v. U.S. Airways to assert that it would be "fundamentally unfair" for this court to consider this extrinsic evidence, ECF No. 18-1 at 8, is misguided, as the case reaffirms that a court cannot consider matters outside the pleadings when considering a 12(b)(6) motion, but does not address any "unfairness" of a court considering evidence attached to a complaint. Bosiger v. U.S. Airways, 510 F.3d 442, 450 (4th Cir. 2007).

payment on November 10 of 2014. CGLIC should release this payment to Penn. Therefore, the Court will grant judgment on the interpleader in favor of Penn.

Further, because Mr. Feldman assigned all rights to the Annuity to Penn when he entered into the loan agreement and signed the Assignment, CGLIC could not have breached the terms of the Annuity, nor breached a fiduciary duty, by issuing these payments to Penn instead of Mr. Feldman. Mr. Feldman failed to pay any of the monthly interest-only payments due during the first year of his loan. As a result, he defaulted on the loan. Penn chose to exercise its rights granted in the event of default. It revoked Mr. Feldman's remaining rights under the Assignment to collect the $1,000 monthly payments. Penn therefore assumed the entire benefit of CGLIC's obligation under the Annuity. Because CGLIC complied with the terms of the Annuity, Mr. Feldman's counterclaims for breach of contract and breach of fiduciary duty will be dismissed.

Similarly, Mr. Feldman's contract-related cross-claims (Counts I-V and Count VII) fail. Because Mr. Feldman assigned the whole Annuity to Penn, Penn could not negligently nor fraudulently misrepresent its entitlement to these funds (Counts II and IV). Likewise, it could not breach the terms of the Assignment by accepting the "guaranteed payments" (Count I), nor exercise dominion over the payments without Mr. Feldman's

permission (Count VII). Further, since Mr. Feldman assigned these payments to Penn, it could not have fraudulently concealed its receipt of the payments (Count III) or have been unjustly enriched by retaining those funds (Count V). Therefore, Mr. Feldman's cross-claims Counts I-V and Count VII will be dismissed.

Mr. Feldman's remaining cross-claim of unconscionable loan terms (Count VI) will also be dismissed. To state a claim for unconscionable loan terms, a plaintiff must allege sufficient facts to show that "[a]n unconscionable contract involves extreme unfairness, made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." Barrie School v. Patch, 933 A.2d 382, 394 (Md. 2007). Mr. Feldman does not allege a lack of meaningful choice beyond a general allegation that he lacked an "opportunity for bargaining." Feldman Ans., ECF No. 8 ¶ 56. Mr. Feldman, however unfortunate his business affairs at the time, was not forced to enter into a loan agreement with Penn, nor was Mr. Feldman an unsophisticated party. See Walther v. Sovereign Bank, 872 A.2d 735, 744 (Md. 2005) (quoting Williston on Contracts § 18:10 (4th ed. 1998)) (stating that the concept of unconscionability was meant to counteract abuse when the imposed-upon party did not have "meaningful choice about whether and how to enter the transaction"). Further, although Mr.

Feldman alleges that he was still suffering from post-concussion syndrome when he entered into the contract with Penn, three years after his accident, he fails to demonstrate that the dizzinesss and vertigo he experienced resulted in the mental incapacity to enter into contract.  As to the actual loan terms, Mr. Feldman makes only conclusory statements regarding unreasonable contract terms, stating only that Penn imposed "an oppressive and unconscionable rate of interest, among other terms." Id.

   Finally, the Court will award attorney's fees and costs to CGLIC, which are to be drawn against the interpleaded funds.  CGLIC, in its response to Penn's Motion for Judgment, moves this Court to grant it attorney's fees and costs.  ECF No. 20 at 4.  "Despite the lack of an express reference in the federal interpleader statute to costs or attorney's fees, federal courts have held that it is proper for an interpleader plaintiff to be reimbursed for costs associated with bringing the action forward."  Trustees of Plumbers and Pipefitters Nat. Pension Fund v. Sprague, 251 F. App'x 155, 156 (4th Cir. 2007).  Courts have the discretion to award fees when "the party initiating the interpleader is acting as a mere stakeholder, which means he has admitted liability, has deposited the fund in court, and has asked to be relieved of any further liability." Rapid Settlements, Ltd. V. U.S. Fidelity and Guar. Co., 572 F. Supp.

16

2d 714, 722 (D. Md. 2009). CGLIC has met the requirements of a disinterested stakeholder, as it acknowledges that it has an obligation to pay under the annuity, has placed the interpleaded funds with the Court, and requested that the Court resolve the dispute of to whom payment is owed. CGLIC does not take a stake in the Court's determination of whether Penn or Mr. Feldman is due the payments under the annuity. Accordingly, CGLIC's request for attorney's fees and costs will be granted.

Penn has requested in the issuance of costs and fees that the Court charge Mr. Feldman rather than take from the interpleaded funds. The practice of this Court, however, is to deduct fees and costs from the interpleaded funds. Sprague, 251 F. App'x at 156. And although the Fourth Circuit has discussed the possibility of charging fees to the losing defendant in an interpleader claim, such a situation could only be considered in the case of bad faith, fraud, or the like. Id. The Court finds that there is no conduct on the part of Mr. Feldman that justifies an order to pay CGLIC's fees and costs. Therefore, CGLIC's attorney's fees and costs will be deducted from the interpleaded funds prior to disbursement to Penn.

## IV. CONCLUSION

For the above-stated reasons, the Court will enter judgment on the interpleader in favor of Penn Mortgage Company, Inc., and dismiss Counts I and II of Mr. Feldman's counterclaims and Counts I-VII of Mr. Feldman's cross-claims.  A separate order will issue.

```
             _____/s/_____
             William M. Nickerson
             Senior United States District Judge
```

DATED: July 1, 2015.